Are you ready to proceed? Yes, Your Honor. Thank you all for the good weather, by the way. I was going to take care of it for bringing you. Well, let's see how long it lasts. Good morning, Your Honors. I ask to reserve four minutes of my time to reply to your argument. Whatever you've got left on the clock is yours. This case concerns the effect of the two-year statute of limitations, not statute of repose, that applies to private causes of action to enforce the Fair Housing Act. The distinction between a statute of limitations and a statute of repose is of great significance in this case because Ms. Thompson's claim cannot be time-barred unless the statute is inferred to constitute a statute of repose. Could you, given the time allowed, I think we've all looked at this fairly carefully, could you turn to the statute 3613 and just help me with one reading of it? That's what I'd like your help on. Okay. It says that an aggrieved person may commence a civil action in an appropriate court, state court, not later than two years after the occurrence or the termination of an alleged discriminatory housing practice, comma, or the breach of a conciliation agreement entered into under this subchapter, comma, whichever occurs last, comma, to obtain appropriate relief. What does the clause, whichever occurs last, in your view, modify? In my view, it modifies whether it's the discriminatory housing practice or it's the conciliation agreement. All right. The breach of either or. So it refers only to, it does not say, it does not modify after the occurrence or the termination, whichever occurs last. No, Your Honor. Okay. Go ahead. Now, the district court's opinion, in a footnote, gave an alternate rationale under which the limitations period for Ms. Thompson's claim could have run before she even visited Rancho Del Norte or was otherwise aware of the inaccessible conditions at that property. Well, the question, though, is the design and construction claim, right? She still has a claim or may have a claim of reasonable accommodation under a different provision of the law, does she not? No, Your Honor. If you turn to the 3604F2, or rather, F3. I'm sorry. I didn't think the light of the case, I didn't include it in the appendix. But F3A and B refer to the refusal to permit, at the expense of a handicapped person, a modification. Well, this is the case where a person is, for example, a tester. They're not going to be able to get a modification in a property that they. But the statute, I'm looking at 3604F3A talks about a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such a person. So it would give a cause of action to somebody who intends to move in. But not to a tester, Your Honor. Well. It's possible to test it. All right. So Ms. Thompson either has a claim under the design and construction provision or she has no claim at all? That's right, Your Honor. Okay. Well, then let's just follow it through. If, in fact, the defendant is correct that the design build both is the occurrence and the termination, what would be the discriminatory practice that survives if what she's complaining about is the, let's assume she wasn't just a tester, what would be the discriminatory practice that she could sue on? The discriminatory practice, Your Honor, is described at 3604F2. Yeah, I understand that. The condition. Okay. I'm asking you to assume the defendants are correct, that the architect and constructor are off the hook, because under the district court's theory, the occurrence, both of the discriminatory act, which is the design, the doorways are too narrow, let us say, there are no steps make it inaccessible, whatever the various provisions of the statute say that are supposed to be incorporated aren't there. So somebody in a wheelchair can't get into it. But under their theory, then the statute begins as soon as the presumably certificate of occupancy is issued, and it terminates at the same time, insofar as they are concerned. That is, Your Honor. In that case, then, what cause of action would lie against anybody else afterward? Because what she'd be suing for is the very thing that defendants say the statute's run on. Oh, yes, Your Honor. If defendants are correct, then there would be no cause of action. Okay. Now, how would you get around it if we accepted their argument and say that there still is, if she were not a tester, is there any way you can get around that? Well, if she were not a tester, if she lived there. No, she comes up and she tries to rent it. She's not a tester. She really wants to rent the place. Then she would have coverage. What would be the discriminatory act? Well, if she asked for a, well, it's she could, on her own, request to make changes. So she could pay for a remodeling. Pay for them. And they would be on the hook if they refused to allow her to make. So, in other words, the financial burden is shifted to the disabled person who has chosen to rent. In this case, was there a fund that was made available by the prior conciliation agreement? There was no conciliation agreement, Your Honor. There was a HUD investigation that showed clearly that there was discrimination. But based upon HUD's. Oh, I'm sorry. It was in Garcia v. Brockway, I guess, that there was a fund. Okay. Never mind. My question. So I think what you're showing, Your Honors, is that unless the standard application of the distinction between statutes of repose and statute of limitations is, you know, adopted with regard to this statute of limitations, you're going to have a situation where the people who created the discriminatory conditions are off the hook after two years. Yeah, but the opposite result is that there's no statute of limitations at all. No, Your Honor. That's not true. There is a statute of limitations, and it's applicable here. The statute of limitations applies to bar someone from bringing a cause of action after two years of their being injured. So if it was 50 years later and your tester, Ms. Thompson, arrived at this complex, she would still have a cause of action. She would, Your Honor. For two years. So 50 plus two. Yes, Your Honor. Okay. And so how does that answer Judge Kaczynski's question? It could be 100 years later. If the facility lasts that long. Yes, Your Honor. But I understood you to argue a continuing violation. If there's a continuing violation, and that's what HUD seems to think, is that anybody who is injured can sue, and the statute doesn't run until the condition has been terminated, under your theory, until the retrofit happens and it's brought into compliance, then the condition hasn't terminated. Exactly, Your Honor. So it doesn't so under Judge Tallman's scenario in question, if somebody comes in and waits 15 years and then decides to sue, as long as the condition of the building remains as it is, as it was 15 years ago, the condition, the discriminatory practice, in your view, hasn't terminated. So why would the date of injury have any relevance? The date of injury is what? To that point. Is what? Because under the Ninth Circuit's Douglas decision, you have to have injury within the statute. Yes, but if it's a continuing injury, the injury continues. Every day is a new injury. So you really have no statute of limitations at all. You can come today, come three years later, you still have the same injury. Every day is a new injury. You could come three years later, Your Honor, yes. So there really is no statute of limitations at all. Even your answer to me that, you know, they've got two years from the time of discovery is not accurate. There is statute of limitations, Your Honor, but there's no statute of repose. Well, I guess I don't understand how the statute of limitations. Show me an example of somebody who would be barred under your theory. Excuse me, Your Honor? Show me an example of somebody who would be time-barred under your theory. Okay. Suppose Ms. Thompson goes there in 2005, and she doesn't go back for three years. She's time-barred. Yeah, but 2008 becomes a new injury because it's a new day, and every day is a new injury. So she's not time-barred. She's time-barred with regard to her injury, Your Honor. She is. Not under your continuing violation theory, she isn't. She's got a new cause of action that – She has a new cause of action. Right. Yes, Your Honor. So there is no – there is no time-bar as far as she's concerned, regardless of when – the cause of action is the same. It's for the same – in essence, it's for the same injury. Failure to comply. Failure to comply is the same condition that sets someone up to be injured. But how is the injury any different in 2008 than it was in 2005? It's the same injury. For the statute of limitations, it's very different because it's based upon the time that the injury occurred. But it doesn't matter. It's the same claim. It's exactly the same claim. All we're arguing about now is the temporal nature of the claim. It's the same claim. I take it if somebody under Bazemore, for example, where they had the continuing discrimination against the black employees, that each – as the court said, there's a new injury, and that affects the people who have been there 15 years. And every time they get that paycheck, there is a continuing violation. So why isn't – under your theory of continuing violation, doesn't she have at least – does she have a new cause of action if she comes back to this building? Or, alternatively, that as long as it hasn't – the condition hasn't been terminated, she can come back as long as it hasn't been terminated. It's an outage, Your Honor. It's an ongoing policy that can injure somebody. Did you want to save some time? Yes, Your Honor. Okay. I'll hear from Mr. – from the other side, from Appellee. Good morning, Your Honors. Your Honors have hit the nail on the head. Appellant's interpretation completely eviscerates statute of limitations. Why? What's the problem here? This is not a statute of repose, which under your theory, Congress, which was enacting a civil rights amendment to increase the rights of tenants. Under your theory, they have two years to discover the condition that was constructed in violation of the requirements that are set forth in the statute, and you're saying that two years, and if you don't find it out, you're out of luck. Your Honor, I believe that this functions as both a statute of limitations at times, and a statute of repose at other times. Well, under your theory, it's always a statute of repose, basically, except for the first two years. It's not, Your Honor. Well, give me an example of how it's not. Okay. In this situation, for example, Your Honor, which is the typical situation, you have a disabled rights organization that sends – Talk about individuals. They weren't focused on organizations. They talk about individuals. That's what Congress was dealing with. But the reality is – excuse me, Your Honor. The reality is, I believe, that in most instances, and Congress was cognizant of this, disabled rights organizations would send in their member testers to test the compliance of the housing. I'm sorry. When did testers get standing? Testers have standing under Smith, as far as I understand. When was that decided? Testers have had standing throughout. Okay. Even before these amendments were adopted? I don't know offhand. Well, they would have had to. Traffic can't in 72, doesn't it? If Your Honor says so, that's the case. But at least testers have been in existence for a long time and had standing for a long time. All right. So this statute was designed with the idea that if I move – I'm in a wheelchair or I'm disabled after – I'm a normal person. I set for a disabling auto accident next week. And your building was built three years ago. And now I go because I have to move in out of my house into an apartment. And I can't rent your place because the statute of limitations under your theory has run and some disabled rights advocacy group didn't find it out. So I'm blocked. And you think that's consistent with the statute? Absolutely, Your Honor. And what does the continuing violations doctrine have to do with it? The House said that that's what they were attempting to invoke. Okay. To answer your first question, the plaintiff in that instance can rent that place. At that point, they have an accommodations claim. And the landlord is required to accommodate. What's the claim? The claim is I intend to rent from this unit. It's inaccessible to me. You need to allow me to make it accessible. The landlord isn't responsible for that. The landlord has to allow the disabled tenant to make it accessible. And if they do not, they can be sued for damages. So if I'm the landlord and I have made the mistake of taking over a noncompliant building, I'm on the hook even though the seller of the building to me is off the hook after two years. You have to permit the disabled prospective tenant to make it accessible. To come in and remodel the apartment. Yes. At their expense. It's not a draft of remodeling. It's changing certain features of the apartment. Like widening the doors, putting in ramps, putting in the light switches. Yes, Your Honor. And the grab, you know, tearing out the walls in the bathroom so that they can take grab bars. That's what they're supposed to do. And if I don't allow them to do that, I can be sued for damages. I can be sued for preemptive damages. That's what the FHA permits. That is, if I don't allow the tenant, the disabled person, to do that at their expense. Yes, Your Honor. And do I have to restore that once I move out? No, the tenant is responsible for restoration. That's right. So that is what you have now said is that the Congress, which intended to protect disabled persons, has essentially let the people who created the condition off the hook after two years and left the disabled person at the mercy of landlords who can say, Sure, you go ahead. You want to remodel this apartment? Fine. You're here for a year. Go ahead. Tear the doors out. Just put them back when you're done. Your Honor, there are two responses to my mind to that. Number one, especially egregious situations or situations where general public policy is violated, the Attorney General's office can always seek retrofitting. It could pursue a claim for damages. Three years after, a claim for civil penalties. Five years after. And in the vast majority of situations, what you're dealing with is a disabled rights organization that sends in a member tester to determine if there's been a violation. Under a reasonable investigation, the disabled rights organization will identify the violation and will have standing to sue by the time that the construction, the design and construction is completed. In this instance, for example, DRAC in July of 1997 sent in its tester to the Villas. They identified the alleged noncompliant features, and they filed a HUD complaint on October 2nd of 1997. The Villas didn't even receive its final certificate of occupancy until October 15th, 1997. So in other words, DRAC had a claim for design and construction discrimination before the Villas was even completed. And what was the nature of the violation that they're alleging? The nature of the specific violation, well, it's a design and construction. But I know, but is it because the doors are too narrow? I can give you the exact. Well, let me, so you don't take up the time. Here's my problem. Congress enacts an amendment that it puts in, in this provision, specifically addressed to builders and designers. And it says, this is what we expect you to do. And you're saying it's unfair to expose builders and designers who willfully ignore the requirements of the statute to hold them liable for the consequences of what they do 2, 5, 10 years later. They built the building. If they are worried about ongoing liability, they can always, when they sell the building, get indemnification, presumably. But you want to turn this into a statute of repose. Now, I've only encountered one statute of repose that I'm familiar with since I've been on the bench, and that was the aircraft engine statute of repose. That is very specific. Your Honor, I don't think. Very specific. What you want us to do is construe this language into something that treats the termination of the practice as the expiration of two years. The termination of the practice that's at issue here is bringing it into compliance with the statute. That terminates the discriminatory practice. It's defined. The discrimination is failing to build doors that are accessible to wheelchairs. Your Honor. You haven't terminated it. That failing to build doors that are accessible to handicapped people occurs and terminates. No, it doesn't. It isn't terminated. The condition isn't terminated. A racial discriminatory policy isn't terminated when it's announced and then what? It's terminated because it's stopped. Your Honor, this category of defendants isn't even control of the housing after it designs and constructs the premises. So what? So what? It's the person, it's the entity that created it. If they've got a problem with ongoing liability, insure against it or again indemnification. They created it. They have not terminated it. Your Honor, first of all, designers, you're saying that designers know that they designed it incorrectly, so therefore, you know, they were willfully liable. That isn't always the case. They may design it correctly and a contractor might build it incorrectly. Right. Then that's their defense. I'm sorry? That's their defense. But what we're talking about is a statute of limitations that specifically says that the person, this whole comes about in the talk about an aggrieved person. The focus is on the aggrieved person. And what is the aggrieved person aggrieved by? An act of discrimination. The act of discrimination is failure to build the doors at the proper width. The building is done, Your Honor, at the time it is constructed. That's the discrimination. That act of discrimination, that condition exists. Now, you're talking about causation. Who made it happen, whatever? That may be a problem you can litigate. Maybe you can shift blame onto somebody, you know, the architect. Say I designed it this way, the builder built it that way. That's something you can let them fight out. But I don't understand how you take an aggrieved person statute of limitations and turn it into what you say is a two-year cutoff, and it all depends on whether or not some disabled rights organization picks up on it and sues. You're basically wiping out the rights of any individual in any area of the country who hasn't been fortunate enough to have a disabled rights organization out doing testing. And, you know, I'm sympathetic. I'm absolutely sympathetic to the builder's situation, and I understand it. But if we're looking at what Congress was doing, it was worried about tenants. It was not worried about the builders and contractors. Your Honor, I don't believe that the statute creates an ongoing responsibility to remedy inaccessible features. I believe that the discrimination is the design, as the statute says, is the design and construction of noncomplying housing. At the time that that — And it hasn't terminated. Why don't you walk us through the statute of limitations and explain exactly how it applies to your client. I will, Your Honor. Just to finish your last statement, Your Honor, I believe if Congress intended to create an ongoing duty to remedy inaccessible features, it would have included language similar to that in the ADA, which makes it discrimination to fail to remove architectural barriers. And that's 42 U.S.C. 12182A4. That language is not in the statute of limitations or in the definition of the claim in the FHA. And therefore, Congress did not intend to create an ongoing duty to remedy inaccessible features. Your Honor, I believe that the — to answer your question, Judge Kuczynski, I believe that the district court interpreted it as follows and followed Maseki and the vast majority of courts that have addressed the statute of limitations in the context — Just give me a simple answer to my question. The simple answer, Your Honor, is that the statute says that a claim can be brought not later than two years after the occurrence or termination of an alleged discriminatory housing practice. It doesn't say could be brought. Where is the language? What exactly? Do you have the statute in front of you? This is 3613A1A, which says that the claim could not be brought later than two years after the occurrence or determination of an alleged discriminatory housing practice. It doesn't say brought. Where do you see the term brought? I'm sorry? Where do you see brought? Your Honor, I'm sorry. I'm looking at an abbreviated definition. It says may commence. I'm sorry? It says may commence. You don't have the statute in front of you? I will pull it. I will bring it up right now. An agreed person may commence a civil action not later than two years after the occurrence or termination of an alleged discriminatory housing practice. Okay. Okay. So an aggrieved person, plaintiff here is an aggrieved person, yes? The plaintiff here, yes. I believe the plaintiff here is an aggrieved person. Yes? Yes. They have a palpable injury. I'm sorry? They have a palpable injury. They're an aggrieved person. Is the answer yes? Yes, Your Honor. Okay. I'm sorry, Your Honor. May commence a civil action. Did commence a civil action, right? Yes. Inappropriate United States District Court, right? Yes, Your Honor. No doubt about that. Not later than two years after the occurrence or termination. Why don't you walk me through that language? Okay. Not later than two years after the occurrence or termination of an alleged discriminatory housing practice. Okay. What is the discriminatory housing practice here? The discriminatory housing practice here, Your Honor, is under 3604F2. It's a violation of 3604F2, which makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling because of a handicap. And that discrimination is defined in 3604F3C, which includes a failure to design and construct in a manner that complies with the FHA. And it was the district court's interpretation that upon the failure to design and construct in compliance with the FHA, there is a discriminatory housing practice within the meaning of 3604F2 because at that point, housing for the disabled is limited, they're treated as second-class citizens, public insensitivity is perpetuated, they're deterred from visiting, viewing, and renting such property, and people are denied the benefits, the social and economic benefits of associating with a handicap. So we're talking discriminatory housing practice is what we're picking up from 3604F13, right? Yes. What is the breach of conditional agreement? No, it's discriminatory housing practice, right? Yes, and that discriminatory housing practice is the completion of the design and construction in a noncompliant manner with the FHA because it's discriminatory housing practice under 3604F2. I don't see discriminatory housing practice defined as such, is it? Well, what it is is it says under 3604F, discriminatory housing practice means an act that is unlawful under Section 3604. Here they're claiming that the unlawful act that is under 3602F defines discriminatory housing practice. Okay. And what does it say? It says it means an act that is unlawful under 3604. It could be unlawful under multiple provisions, but here they're alleging that the unlawful act took place under 3604F2. Okay. So all of F2 defines a type of discriminatory housing practice? If it's – if the actions are unlawful under 3604F2, that constitutes a discriminatory housing practice for purposes of Section 3613A1A, which is the statute of limitations. And it is our position. And then discrimination, the definition of discrimination under 3604F2 is defined under 3604F3C here, which is the failure to design and construct in accordance with the FHA. Now, you used the word read in somewhere in your recitation in connection with that, conclusion. Where does the word conclusion come in here? I'm sorry, Your Honor. All it says is in connection with the design and construction, a failure to design and construct these dwellings in such a manner that, and so on, and it goes on to the list. There's nothing, no word of conclusion in that. That's the act of discrimination, correct? Your Honor, though, the – Is that correct? Is that correct to say yes or no? The conclusion of the design and construction is the action. Not conclusion. It just says what the statute says in connection with the design and construction, the failure to design and construct those dwellings in such a manner that. That's what the statute says. The failure to design and construct occurs and terminates upon the conclusion of the design and construction. It doesn't. The condition persists. It's a continuing effect of the original discrimination. It's an ongoing result. It's not continuing design and construction. It's not continuing design and construction. Final certificates of occupancy have been issued. To continue to design and construct, they'd have to go through an entire permitting process and redesign, reconstruction. It's a continuing effect. It's not a continuing violation. Well, that may be, but it's the – then you get into the continuing violation doctrine, which they intended to incorporate. So I'm not sure. I believe you have a continuing violation, Your Honor, under a design and construct claim. I believe in the court's analysis in Ergs where it said if the design and construction continues into the statute of limitations period and it's done in a manner that's not compliant with FHA, that's a continuing violation of a design and construction discrimination, and you would be able to bring suit long after the original design and construction. In that case, you had two different apartment complexes, and the first apartment complex was completed, and the plaintiff brought an action three years – I don't remember how many years, but it was after two – more than two years after the completion of the original apartment complex, but the same builder continued to build apartments in a non-compliant fashion. We're reading. Okay. I'm familiar with the case. Okay. I understand your argument. Your Honor's time. Thank you, Your Honor. Your Honor, if I may make reference to a case that Judge Kaczynski mentioned, and that's the Tropicante case from 1972. In that case, the Supreme Court noted the importance that private enforcement has in the enforcement of the Fair Housing Act. That hasn't changed. And so my opponent's reference to the powers of the Attorney General to bring suits is really – it's only a minor factor in the overall enforcement of the Fair Housing Act in the country. And with regard to Your Honor's concern about the – well, about the fairness, about bringing a lawsuit against a builder who built it 50 years ago, that is a matter of concern. And I think that the district court was driven by a sense of fairness in that regard, even used the word fairness. But there are – there is a very broad grant of authority to the district court in what kind of remedies it will make for a Fair Housing Act violation. Changing a statute of limitations into a statute of repose to suit an interest in fairness is not the way to address fairness concerns. It's very hard to say that when the construction and the design happens in one year that – to your statute of limitations that the claim can be brought many years later. Nothing has happened. The design has done nothing in the meantime. That's the problem, Your Honor. They haven't fixed it. The failure is ongoing, as HUD has recognized. Unless there is a duty to remedy, I don't see anything in the statute that says you need to go back and correct. Well, just from the word failure, Your Honor, that can be inferred from that. Where is the word failure? In 3604 F3C. What does it say exactly? F3C?  It's a failure to design and construct. Yeah, well, but failure to design and construct sounds like things happening the time you're designing and constructing. It would be very different if it said failure to correct or failure to keep up to date or failure to go in and has a continuous responsibility to correct construction errors and then you fail to do that. You could say that is an actionable event. But here all of the responsibilities on constructors and designers seem to happen at the time they do the construction and design. Well, and the analogy used by Congress, Your Honor, that it's like putting up a sign saying no handicapped people need, no handicapped people allowed, and they fail to take down that sign. That's the analogy? It's not a perfect analogy because the sign is easy to take down. Well, you know, if you let me finish my sentence, then maybe you'll why don't you tell me what I was going to say? Excuse me, Your Honor? You're the guest? Not that you didn't let me say it. I thought I had a good guess. I was wrong. Huh? I thought I had a good guess. I was wrong. It was a trivial guess, but not a good guess. No, the sign reflects the policy. It doesn't reflect. It's not just a sign. It's just not a piece of paper. If you have a sign on the side of a building that's forgotten, it's an old sign, you didn't know it was there, but your policy has changed, the sign doesn't mean anything. I mean, it may still be illegal because it deters people. But what the sign is, if it's an active sign, it's a reflection of a current practice, of current things that people do inside the building, which is if you come in being black or handicapped or, you know, whatever, they treat you differently. It's not the sign. It's not the piece of paper. It's not the words themselves. It is the continuing actions of the people inside. Buildings are different. Once you build them, they are built. Now, unless you have some responsibility to go back and change them, which I don't see here, once you design a building, once you put up a doorway, there's no continuing policy that needs to support a reflection. It's just a doorway. So a sign is really quite different. But it is a continuing condition, Your Honor, and that is what 3604 asks. That's really where you have to, where the rubber hits the road, where you win or lose is whether it's a continuing violation. It's a continuing condition for sure, but whether that's a continuing violation is really the question. But the violation at issue, Your Honor, is 3604F2, which has to do with conditions. But I think what's causing me concern is the distinction in some of the Supreme Court cases between the act and effect. There's no question that the act of the design, which failed to comply with the law, and the act of construction, which also failed to comply with the law, occurred at or before the time that the certificate of occupancy was created. The question is whether or not the continuing violation doctrine makes it a continuing act or whether it is simply the effect of the prior act. And I think that the Supreme Court has recognized the distinction between act and effect in interpreting the applicability of statutes of limitation. Am I wrong? The Supreme Court has made a distinction, Your Honor. The distinction is usually what the district court addressed in terms of employment discrimination and between discriminatory hiring and discriminatory promotion and saying that discriminatory promotion is different and the continuing violations doctrine applies there because someone is suffering an injury ongoing. And that's the same situation here, where a disabled person can go there and encounter discrimination. Discrimination is ongoing. So... Thank you. We'll hear...
judges: Kozinski, Fisher, Tallman